IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ERICA GULLEY                                                                                           PLAINTIFF

V.                                        CASE NO. 08-CV-1077

CITY OF CAMDEN, ARKANSAS;
CHRIS CLAYBAKER, Mayor for the city of Camden,
In His Individual and Official Capacities; WILLIAM
O'KEEFE, Chief of Police, In His Individual and Official
Capacities; GEORGE INGRAM, Lieutenant for the Camden
Police Department, In His Individual and Official Capacities;
and STAN KENDALL, In His Individual and Official
Capacities.                                                                                          DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed by Defendants. (Doc. 12). Plaintiff, Erica Gulley, has filed a response. (Doc. 16). Defendants have replied. (Doc. 21). The Court finds this matter ripe for consideration.

BACKGROUND

Erica Gulley is a resident of Camden, Arkansas who resided at 509 Carver Courts during the period relevant to this cause of action. This lawsuit arose from an arrest warrant that was executed for Erica Gulley on or about October 2, 2007.

On or about September 20, 2007, Samuel and Mary Mulligan visited the Camden Police Department where they filed a police report with Officer John Mahaffey. The Mulligans reported that they had been the victims of apparent identity theft, stating that someone had fraudulently stolen from their First Bank of Arkansas checking account by making unauthorized check

1

payments. Samuel Mulligan reported that while reviewing his bank statement in September 2007 he discovered two electronic charges that were unaccounted for: one for $2.95 and the second for $395.00. Both charges were made to Entergy Arkansas. After contacting Entergy, the Mulligans were informed that the payments were made to Entergy's Bill Matrix electronic processing system for the payment of a utility bill. Lieutenant Ingram was assigned to the case and received the initial report prepared by Officer Mahaffey. In statements made initially to Officer Mahaffey and later to Officer Ingram, Samuel Mulligan reported that when he contacted Entergy to investigate the matter further he was told he would have to hire a lawyer to obtain any further information regarding who was responsible for the charges. Mary Mulligan, however, contacted Entergy and was told by Entergy personnel that the person who made the unauthorized electronic payment was an individual named Erica Gulley who resided at Carver Courts. Lieutenant Ingram did not corroborate this information with Entergy prior to Gulley's arrest.

      The Mulligans reported to Officer Ingram that, while they did not personally know Erica Gulley or how she would have obtained their checking information, they believed Gulley had worked at Andy's restaurant in the past. The Mulligans also indicated that the only place they had written a check during the relevant time period was at Andy's restaurant. Lieutenant Ingram established that Gulley was no longer employed at Andy's restaurant at the time of the investigation and was currently working at Murphy's convenience store in Camden, Arkansas. Lieutenant Ingram did not verify the exact dates of Gulley's employment at Andy's restaurant prior to the arrest.

      Lieutenant Ingram continued his investigation by interviewing Andy's restaurant assistant manager Ramona Heard. Heard informed him that at some point she had placed a Friday night

security deposit in her vehicle where it stayed through the weekend. Heard then told Lieutenant Ingram that she believed Erica Gulley, who lived at Carver Courts and was a friend of Heard's daughter, may have had access to the deposit that weekend. This initial interview with Heard was not documented by Lieutenant Ingram.

Lieutenant Ingram prepared an affidavit for Erica Gulley's warrant of arrest and presented it to Judge Hamilton Singleton, a Ouachita County Circuit Judge. This affidavit laid out the above testimony of the Mulligans regarding the electronic charges and stated that Gulley "had worked at Andy's and the Mulligans had eaten at the business and paid by check." Finding that probable cause existed, Judge Singleton signed the warrant for Gulley's arrest.

On or about October 2, 2007, Officer Stan Kendall arrested Erica Gulley at Murphy's convenience store, her place of employment, and transported her to the Camden Police Department. Gulley was moved later that day to Calhoun County Jail in Hampton, Arkansas where she was held overnight. At various points during her arrest and subsequent incarceration, Gulley professed her innocence to police and informed them that she had been mistakenly arrested.

On October 3, 2007, Gulley made her first appearance before Judge Singleton, paid a $20.00 fee to Calhoun County Jail, and was released on a signature/appearance bond in the amount of $5,000.00. Gulley was released on her own signature and did not have to post any money.

After Gulley's arrest and release, Lieutenant Ingram continued to investigate the case. Eventually it was discovered that the witnesses in the case had given him inaccurate information and that Erica Gulley did not commit the crime. It was also discovered that Erica Gulley's

employment with Andy's restaurant had ended approximately fourteen months prior to the Mulligans writing a check there. On November 14, 2007, Lieutenant Ingram moved to quash the warrant against Erica Gulley and did not pursue the case against her.

On October 1, 2008, Gulley filed this suit under 42 U.S.C. §1983 pursuant to the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Gulley also raised various tort claims under Arkansas law including false arrest, false imprisonment, the tort of outrage, and malicious prosecution. In her complaint, Plaintiff alleges that her substantive and procedural due process rights were violated because the warrant that lead to her arrest and detention was constitutionally invalid. She further alleges that intentional acts, deliberate indifference, and negligent conduct by employees of the City of Camden lead to deprivation of her civil rights.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment;

> The judgment sought shall be rendered if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c)(2); *Krenik v. County of LeSueur,* 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow,*

826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

      The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank,* 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.*  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of LeSueur,* 47 F.3d at 957.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

DISCUSSION

      Gulley brings this suit under 42 U.S.C. §1983.  Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and law." 42 U.S.C. §1983.  Therefore, a §1983 plaintiff must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003)(quoting *Shrum v. Kluck*, 249 F.3d 773, 777 (8th Cir. 2001)).  In this case, Gulley alleges both procedural and substantive due process

violations.

Gulley brought this §1983 suit against the City of Camden as well as Mayor Chris Claybaker, Chief William O'Keefe, Lieutenant George Ingram, and Officer Stan Kendall in their individual and official capacities. These Defendants contend that they are entitled to qualified immunity in their individual capacities. Under qualified immunity, state actors are protected from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kuha*, 365 F.3d 590, 606 (8th Cir. 2003)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). At the summary judgment phase, the qualified immunity inquiry is a three-step process. The first question is whether the plaintiff has asserted a violation of a constitutional or statutory right. If so, the next question is whether or not the right asserted was clearly established at the time of the violation. The final question is whether, viewing the facts in the light most favorable to the plaintiff, there are genuine issues of material facts as to whether a reasonable official would have known that the alleged action violated that right. *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000).

First, the Court must decide if the facts alleged, taken in the light most favorable to the Plaintiff, demonstrate a violation of a federal constitutional or statutory right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If they do not, then summary judgment in favor of Defendants in their individual capacities is appropriate. Therefore, the Court will first determine if Gulley's due process rights were violated by the individual Defendants when a warrant was issued for her arrest and she was subsequently detained.

*Gulley's claim that her Fourth Amendment due process rights were violated*

Gulley claims that the affidavit submitted by Lieutenant Ingram, on its face, did not

contain a sufficient number of facts to find probable cause for her arrest. Alternatively, Gulley claims that even if the affidavit appeared to show probable cause justifying the issuance of a warrant, the warrant was nevertheless invalid due to deliberate and reckless omissions of fact from the affidavit.

It is clearly established that the Fourth Amendment guarantees citizens a right to be free from arrest absent a truthful factual showing sufficient to constitute probable cause. *Hill v. Scott*, 349 F.3d 1068, 1072 (8th Cir. 2003)(citing *Habiger v. Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)). It is the task of a judicial officer to make this probable cause determination before or quickly after arrest. *Baker v. McCollan*, 443 U.S. 137, 143 (1979). In order for a Plaintiff to survive a motion for summary judgment as to his or her Fourth Amendment claim, he or she must demonstrate that (1) probable cause for arrest did not exist; and (2) raise a genuine issue of material fact as to whether reasonable officers would have known that the conduct of the officer would have violated the Fourth Amendment. *Scott*, 349 F.3d at 1072 (citing *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000)).

In this case, Judge Singleton, in his role as a judicial officer, determined that Lieutenant Ingram's affidavit contained information sufficient to establish probable cause. This finding must be given substantial deference by the Court. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). A search warrant valid on its face and issued upon a judicial officer's finding of probable cause can be undercut only if certain procedural and substantive requirements are satisfied by the person challenging its validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). In order for a Fourth Amendment violation to be found, the Plaintiff must establish that "(1) the affiant included in the affidavit 'a false statement knowingly and intentionally, or with reckless disregard for the truth,'

and (2) 'the affidavit's remaining content [was] insufficient to establish probable cause.'... The same analysis applies to omissions of fact in a affidavit." *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009)(quoting *United States v. Humphreys*, 982 F.2d 254, 258 (8th Cir. 1992)(citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Truthful means that the police officer believes or appropriately accepts the information put forth in the affidavit as true. *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009). Furthermore, it is the Plaintiff's burden to prove, with affirmative evidence, that false statements were intentionally or recklessly included in the affidavit. *Id.* at 403. It is not enough for the Plaintiff to respond with general attacks on the officer's credibility; they must carry the burden of "proving the pertinent motive" that lead the officer to include the false statement or omission. *Id.*

     Viewing the evidence before it, in the light most favorable to Gulley, the Court finds that the record does not establish a genuine issue of material fact as to whether Defendant Lieutenant Ingram intentional or recklessly included false information or intentionally or recklessly omitted information in his affidavit. The affidavit gave the appearance that Gulley's past employment at Andy's, either directly through her duties or her contact with other employees, had given her access to the check which the Mulligans used at Andy's. However, Plaintiff has failed to provide affirmative evidence that Lieutenant Ingram believed this assertion to be false when he included it in the affidavit. Furthermore, Plaintiff has not provided evidence of motive or impartiality on the part of Lieutenant Ingram that would have motivated him to include false statements or omit critical information from the affidavit. While Lieutenant Ingram could have done more to verify that assertions in the affidavit were correct, negligent investigating does not amount to a Fourth

Amendment violation.[1]  *Daniels v. Williams*, 474 U.S. 327, 334 (1986).  Based upon the record before the Court, Lieutenant Ingram believed the information provided by the Mulligans implicated the Plaintiff, and he believed the Plaintiff may have had access to the check through her former employment and contacts at Andy's restaurant.  While Lieutenant Ingram was ultimately incorrect, Plaintiff has offered no specific or non-conclusory evidence showing that Lieutenant Ingram was purposefully being untruthful or reckless in his affidavit.

Due to this lack of affirmative evidence, Plaintiff has not met the burden required to undercut the search warrant here which was valid on its face and issued upon Judge Singleton's finding of probable cause.  Because the warrant was constitutionally obtained, Plaintiff's Fourth Amendment due process claims stemming from an alleged lack of probable cause must fail.

*Gulley's claim that her Fourteenth Amendment due process rights were violated*

Gulley alleges that her Fourteenth Amendment due process rights were violated upon her arrest and subsequent overnight detention for a crime that she did not commit.  The Fourteenth Amendment guarantees "[s]ubstantive due process [,which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  *Moran v. Clark*, 296 F.3d 638, 643 (8th Cir. 2002)(alterations in the original)(quoting *Weiler v. Purkett* 137 F.3d 1047, 1051 (8th Cir. 1998)(en banc)).  However, the Fourteenth Amendment "does not protect against all deprivations of liberty.  It protects only

---

[1] Plaintiff's evidence of an alleged "reckless disregard for truth" largely stems from her belief that Lieutenant Ingram should have known to investigate further due to statements by the Mulligans that Plaintiff claims were inconsistent. Plaintiff also points out that Lieutenant Ingram did not have complete information regarding Plaintiff's time of employment at Andy's prior to seeking the warrant.  Ultimately, these are issues pointing to what would amount to a negligent investigation.  This alleged negligence is not sufficient affirmative evidence of a reckless disregard for truth.

against deprivations of liberty accomplished 'without due process of law.'" *Baker v. McCollan*, 443 U.S. 137, 145 (1979). There is no guarantee under the Fourteenth Amendment that only the guilty will be arrested. *Id*. Furthermore, a negligent investigation that leads to the arrest of an innocent individual does not rise to the level of a due process violation. *Daniels v. Williams*, 474 U.S. 327, 334 (1986)("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").[2]

Gulley was deprived of her liberty when she spent one night in detention. However, this one night detention, resulting from what the Court has determined was a valid arrest warrant, does not amount to a deprivation of liberty without due process simply because Gulley was later exonerated.[3] Viewing the facts in the light most favorable to the Plaintiff and assuming that a negligent investigation by Lieutenant Ingram lead to the warrant and arrest, Plaintiff's Fourteenth Amendment claim must still fail. "False imprisonment" does not become a violation of the Fourteenth Amendment simply because the defendant is a state official who has acted negligently. Gulley's arrest and detention complied with proper protocol following the issuance of a constitutionally valid warrant. Therefore, Plaintiff's Fourteenth Amendment claims alleging a deprivation of liberty absent due process must fail.

*Qualified Immunity*

Because there is not enough evidence before the Court to create a genuine issue of fact as to whether the Defendants' conduct violated Gulley's constitutional rights, it is unnecessary for

---

[2] "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort law principles." *Baker*, 443 U.S. 137, 146.

[3] In *Baker v. McCollan*, the Court held that a three-day detainment after police mistakenly arrested an innocent individual was not a violation of due process since the arrest was made on the basis of a valid arrest warrant. 443 U.S. at 144-145.

the Court to address the next two steps in determining if qualified immunity exists: (1) whether the right was clearly established; and (2) whether a reasonable official would have known that the alleged conduct violated that right. Therefore, Defendants Chris Claybaker, William O'Keefe, George Ingram, and Stan Kendall are entitled to qualified immunity and summary judgment on Plaintiff's §1983 claims filed against them in their individual capacities.

*The City of Camden and individual Defendants in their official capacities*

In addition to bringing suit against the above Defendants in their individual capacities, Gulley also brings §1983 claims against the City of Camden and the Defendants in their official capacities. The "real party in interest in an official-capacity suit is the governmental entity and not the named official." *Robb v. Hungerbeeler*, 370 F.3d 735, 739 (8th Cir. 2004). Thus, an official-capacity suit is treated as a suit against the governmental entity. *Id*. Because the claims here against the City and these individual Defendants are the same, the Court's analysis in this section applies to all parties.

In a 42 U.S.C. §1983 suit against a municipality, the Court must determine two issues: (1) whether a plaintiff's harm was caused by a constitutional violation, and (2) if so whether the city is responsible for that violation. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000). A city is responsible for a constitutional violation when a municipal custom or policy causes the violation. *Id*. at 432.

Because the Court has determined that neither a Fourth or Fourteenth Amendment violation has taken place, Plaintiff has not met the first element required to bring suit against the City of Camden. It is not necessary to consider the second element of whether a custom or policy of the municipality might have lead to Gulley's arrest and detention. Therefore, the City of

11

Camden and the individual Defendants in their official capacities are entitled to summary judgment on Plaintiff's §1983 claims.

*Gulley's tort law claims*

In addition to Gulley's §1983 claims she also alleges false arrest, false imprisonment, the tort of outrage, and malicious prosecution under state tort law.  Because summary judgment has been granted to the Defendants on all §1983 claims, the Court will not exercise 28 U.S.C. §1367 supplemental jurisdiction over Plaintiff's state tort law claims.  These claims are dismissed without prejudice and may be re-filed in state court.

## CONCLUSION

Based upon the foregoing, the Court finds that Defendants Chris Claybaker, William O'Keefe, George Ingram, and Stan Kendall are entitled to qualified immunity on Plaintiff's §1983 claims filed against them in their individual capacities.  The City of Camden, Chris Claybaker, William O'Keefe, George Ingram, and Stan Kendall are also entitled to summary judgment in their official capacities.  Therefore, Defendants' Motion for Summary Judgment on the basis of qualified immunity and as a matter of law should be and hereby is **granted**.  The remaining tort claims under Arkansas state law are dismissed without prejudice.  A judgment of even date, consistent with this opinion, will be issued.

IT IS SO ORDERED, this 1st day of July, 2010.

    /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge